IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NANCY GARDUNO,

        Plaintiff,

vs.                                                     CIVIL NO. 11-35 LFG/WDS

ALBERTSON'S LLC,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Albertsons, LLC's ("Albertsons") Motion for Summary Judgment [Doc. 34]. Plaintiff Nancy Garduno ("Garduno") was originally required to respond by October 11, 2011, but based on a letter to the Court [Doc. 35] indicating that she was attempting to secure counsel and needed more time, the Court granted her until October 31, 2011 to file her response [Doc. 36]. Garduno failed to respond to the motion for summary judgment, and Albertsons filed a "Notice of Completion of Briefing" on November 1, 2011 [Doc. 37].

While the district has a local rule indicating that a failure to respond constitutes consent to grant the motion, our circuit court has stated that it is improper to grant default simply because of a party's failure to file a response. *See* Martinez v. Alire, 172 F.3d 63 (10th Cir. 1999). Dismissal for failure to respond would constitute a sanction, and a sanction dismissal could only be granted upon an analysis under Ehrenhaus v. Reynolds, 965 F.2d 916, 920 (10th Cir. 1992), or Murray v. Archambo, 132 F.3d 609 (10th Cir. 1998).

Accordingly, the Court will not grant Albertsons' motion on the basis that Garduno defaulted. Rather, it will conduct a merits evaluation. The Court determines, however, that the failure to challenge Albertsons' factual representations in its proposed Undisputed Material Facts,

constitutes a waiver of any challenge to those facts.

## Background

Garduno contends that she was fired from Albertsons because of her sex and age. However, Albertsons has come forward with evidence demonstrating that Garduno was fired for engaging in "sweetheart checking," which describes a situation wherein an employee fails to ring up an item or fails to charge customers or associates for items at the appropriate price. Pursuant to Albertsons' Associate Purchases and Personal Belongings Policy [Doc. 34, Ex. C], engaging in sweetheart checking constitutes grounds for termination.

Albertsons demonstrates that when Garduno was hired, she received an Associate Handbook. The Handbook provides, "Associates may not reduce the price of merchandise for themselves, other associates, friends or relatives." It further provides that when associates are customers, they are to be charged the same price as other customers. Failure to follow this policy "may result in immediate termination of employment." [Albertsons Associate Handbook, Ex D]. Garduno testified that she understood that these were Albertsons' policies. [Garduno Depo. at 66, line 21, through 68, line 20].

Albertsons demonstrates that Garduno was previously written up for tardiness. Garduno does not contend that she was on time or that the write up was inappropriate. [Garduno Depo. at 208, line 24 through 209, line 21]. Garduno asserted that other employees were given preferential treatment, and uses as comparators Mary Garcia and Therese Quintana, [Garduno Depo. at 87, line 7, through 88, line 9]. However, both of these individuals are the same age and gender as Garduno..

Garduno also contends that another employee, Angela Rizo, was treated more favorably. Ms. Rizo was not terminated for being late; but neither was Garduno. Albertsons demonstrates that Ms. Rizo was also disciplined for being late, but Garduno was terminated for violating the sweetheart checking policy. [Garduno Depo. at 205, line 19, through 208, line 23].

It is undisputed that on January 14, 2010, Daniel Lopez, an Albertsons manager, and his wife Pam Mondragon were customers at Garduno's checkout lane. Garduno failed to charge Lopez for all of the goods purchased, and then voided a charge for the most expensive item, a pomegranate drink costing $9.99. Garduno pretended, but actually failed, to scan various items. When Ms. Mondragon handed Garduno $40 to pay for the groceries, Garduno gave her $37.18 in change. The following day, Lopez notified Garduno's supervisor, Frank Gonzales, of the undercharge and paid for the items which had not been properly scanned.

An investigation ensued and Mark Zbylut, Albertsons' Division Loss Prevention Manager, reviewed store security videos on the date and time of purchase, and located the transactions involving Lopez and his wife. Zbylut confirmed that Garduno was making motions as if to scan items, but was not actually scanning them. [Declaration of Mark Zbylut, Ex. F].

Zbylut also observed Garduno engaging in the same conduct for another Albertsons employee, Jennifer Alberico. Ms. Alberico placed several items on the counter, including three 12-packs of soda and two packages of meat. Garduno acted as if she was scanning these items, but failed to charge Ms. Alberico for all of the items. The result was that Alberico did not pay full value for the items received

When Zbylut contacted Garduno about these practices, Garduno contended that, with respect to the incident of January 14, 2010, she was simply bagging items because she thought they had been paid for at another register, and further contended that she was acting under the direction of Mr. Lopez who told her not to scan the items. Garduno gave a similar explanation about Ms. Alberico, contending that Ms. Alberico claimed to have paid for the groceries at another register. Albertsons contends that the explanation was not credible. When Ms. Alberico was questioned by Zbylut, she stated that she admitted receiving goods for less than full value, but stated that she did

not request any discount from Garduno, and also that Garduno told her she had given discounts to others that day.

Following completion of Zbylut's investigation, he submitted a report to Angel Seydel, in the Associate Relations Department. The report was ultimately submitted to Frank Gonzales [Declaration of Frank Gonzales, Ex. E]. Mr. Gonzales concluded that Garduno had engaged in sweetheart checking to curry favor with colleagues and supervisors, and that the explanations for why she did not ring up every item were simply not credible. Mr. Gonzales also faulted Ms. Alberico for not reporting that she had benefitted from the sweetheart checking. [Id.]. Ms. Alberico was terminated from Albertsons for failing to report the sweetheart checking and Garduno was terminated for engaging in sweetheart checking.

## Analysis

Garduno has failed to come forward with any admissible evidence which demonstrates a triable issue of fact. At most, her Complaint asserts conclusory allegations about the reasons for her termination. However, for summary judgment purposes, the Court may not rely on the pleadings. Rather, parties must submit affidavits, deposition testimony, answers to interrogatories or other admissible evidence demonstrating a triable issue. Garduno submits no admissible evidence of any kind showing that similarly situated individuals of a different age or gender were treated more favorably. In this case, Albertsons has made a *prima facie* showing of entitlement to judgment; and Garduno has failed to submit any evidence to rebut the showing.

Albertsons has offered business-justified neutral reasons for Garduno's termination. That is, termination for engaging in "sweetheart checking," a prohibited practice. Garduno has not offered any evidence from which the Court can conclude that Albertsons' evidence is not worthy of belief. Thus, to the extent Garduno was able, by virtue of her Complaint, to make a *prima facie*

showing of discrimination by demonstrating that she is in a protected class, and that she suffered an adverse job action, *see* Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir. 1998), Albertsons has overcome that showing by demonstrating a non-discriminatory, business-related reason for its actions. See Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005).

It is not the function of the Court to sit as a "super personnel department" over an employer's business operations. *See* Hinds v. Sprint/United Mgt. Co., 523 F.3d 1187, 1198-99 (10th Cir. 2008). In other words, it is not up to the Court to determine whether the action taken was harsh or whether there would have been some other way to deal with the sweetheart checking problem short of termination, for example, suspension or demotion.

Title VII is not a civil service statute. Birdge v. Apfel, 141 F.3d 1184 (10th Cir. 1998). Further, an employer may engage in any conduct, even if it is deemed unfair or even reprehensible, so long as it is not discriminatory. Neal v. Roach, 349 F.3d 1246, 1252 (10th Cir. 2003).

In this case, Albertsons acted because of its well-documented belief that Garduno was violating its policies and procedures by engaging in sweetheart checking. Thus, it is clear that Albertsons' motivation was compelled by its belief that Garduno was violating procedures, and not by Garduno's age or gender. *See* Tatum v. Phillip Morris, 16 F.3d 417 (10th Cir. 1993)(it was not a violation of Title VII to fire an African-American employee when the employer believed, albeit mistakenly, that the employee was a thief).

Based on a merits review of the Motion for Summary Judgment, the Court concludes that Albertsons demonstrated a business-related non-discriminatory reason for Garduno's termination. Garduno has failed to demonstrate any material fact in dispute and has failed to overcome Albertsons showing of entitlement to judgment. *See* Price Waterhouse v. Hopkins, 490 U.S. 228, 243-252 (1989).

For these reasons, the Court determines that Albertsons motion is well-taken and summary judgment is granted in favor of Albertsons and against Garduno.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge